PAUL J. VINCI vs. PHILIP J. BYERS.[1]

No. 04-P-1456.

Middlesex. September 13, 2005. - November 21, 2005.

Present: GREENBERG, KANTROWITZ, & MILLS, JJ.

*Limitations, Statute of. Attorney at Law,* Malpractice.

A Superior Court judge correctly entered summary judgment in favor of the defendant attorney on a legal malpractice claim, where the statute of limitations contained in G. L. c. 260, § 4, barred the plaintiff's cause of action, which accrued more than three years prior to the filing of the complaint, and where the doctrine of continuing representation did not apply to toll the running of the statute. [138-141]

CIVIL ACTION commenced in the Superior Court Department on May 3, 2002.

The case was heard by *Nancy Staffier,* J., on a motion for summary judgment.

*Stephen J. Duggan* for the defendant.

*Robert D. Loventhal,* for the plaintiff, submitted a brief.

KANTROWITZ, J. Rather than let sleeping dogs lie, the plaintiff, an attorney, was intent on shining light not only on the alleged malfeasance of the attorney who handled his divorce, but on his own malfeasance as well. Some might say that no good can come from this strategy.[2]

On May 3, 2002, Paul J. Vinci filed a complaint alleging legal malpractice against Philip J. Byers, an attorney who represented Vinci in his divorce proceedings. Acting on Byers's motion for summary judgment, a judge in the Superior Court

---

[1]The complaint states the defendant's name as Phillip Byers. We use the spelling and version stated in the defendant's answer and other documents filed by the defendant.

[2]The attorney for the plaintiff filed a brief but failed to appear at oral argument. We rely on his brief.

concluded that Vinci's cause of action was barred by the three-year statute of limitations, G. L. c. 260, § 4,[3] and allowed the motion.

Vinci appeals, claiming that the continuing representation doctrine should be expanded and applied to his case; that Byers should be estopped from asserting the statute of limitations due to his conduct; that summary judgment could not be granted on Vinci's general negligence claim; and that the date of accrual of Vinci's cause of action could not be decided by summary judgment. We hold that the cause of action accrued prior to May, 1999, and that the continuing representation doctrine is inapplicable. We, therefore, affirm the judgment.

*Facts.* "We recite the material facts in the light most favorable to [Vinci], as the nonmoving party." *Lyons* v. *Nutt*, 436 Mass. 244, 245 (2002).

On or about November 10, 1996, Vinci, an attorney, retained Byers to represent him in his divorce proceedings. In mid-January, 1997, Vinci received a referral fee of about $228,000 for a personal injury case. According to Vinci, he immediately informed Byers, who told him to make the referral fee "disappear" so that it would not be known in the divorce negotiations at this point.[4] This advice made Vinci uncomfortable, but he followed it nonetheless. Vinci lent the full amount, as an unsecured ninety-day loan, to a high school friend on or about January 23, 1997, for an interest payment of $5,000.[5] Between January 16, 1997, and June 30, 1998, Vinci, allegedly at Byers's direction, filed three financial statements with the Probate and Family Court that did not disclose the referral fee.[6] The financial statement

[3] General Laws c. 260, § 4, provides in pertinent part: "Actions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues."

[4] Byers denied all of Vinci's allegations on the merits, but does not dispute them solely for the purposes of this appeal.

[5] Vinci's high school friend subsequently filed for bankruptcy and failed to repay Vinci around $142,000 of the $228,000 loan.

[6] According to the Probate and Family Court docket sheet, the financial statements were submitted on January 16, 1997; December 3, 1997; and May 21, 1998. It is unclear whether Vinci had received the $228,000 referral fee when he filed the first financial statement. Only the May 21, 1998, statement was made part of the summary judgment record, and it is the only one included

submitted on May 21, 1998, was signed by Vinci under the penalties of perjury.

In April, 1998, Vinci spoke with an attorney in his office concerning a hypothetical involving his own case. The attorney opined that the referral fee should be immediately disclosed to "the divorce attorney and/or spouse" and that "the [Internal Revenue Service (IRS)] tax issue [should be addressed] . . . as interest and penalties are incurring at substantial rates." Conversely, Byers allegedly told Vinci not to be concerned with the issue, as he (Byers) had consulted with another attorney who was a former member of the Board of Bar Overseers. Vinci, who himself had handled two divorce cases in the past, continued to follow Byers's obviously improper advice.

On June 30, 1998, Vinci and Byers met with Vinci's wife and her counsel for a "four-way meeting," presumably as required by Probate and Family Court Standing Order 1-88 (1988).[7] During this meeting, the wife's counsel questioned Vinci as to whether he had recently received a large referral fee. Vinci responded in the affirmative, revealing its size. Byers allegedly disclaimed any knowledge of the referral fee, aborted the meeting, and took Vinci outside to discuss the issue. According to Vinci, Byers grabbed him by the tie, told him that he (Byers) would be in trouble for having known about the fee, and that Vinci had better not admit to anyone that Byers knew because Byers "wasn't going down for this."

At that point and from then on, Vinci "felt that [his] whole defense of this case was compromised, and that [he] was losing faith in Mr. Byers to represent [him] diligently." Vinci, however, did not seek new counsel and continued to be represented by Byers. On September 14, 1998, Vinci gave Byers a check for legal services in the amount of $6,000. Vinci further alleges that on April 27, 1999, shortly before the scheduled trial date, he was pressured into signing a separation agreement that he

in the record appendix before us.

[7]Standing Order 1-88 provides in relevant part: "Prior to the scheduled date of the pre-trial conference, a four-way meeting (parties and counsel) is to be held to identify and attempt to resolve the contested issues." Standing Order 1-88 was deleted upon the adoption of Probate and Family Court Standing Order 1-04, effective October 4, 2004.

perceived to be unfair to him, and remained convinced that he would have obtained a better result by going to trial.[8]

On May 4, 1999, the Probate and Family Court approved the separation agreement between Vinci and his wife. Vinci claims that Byers continued to represent him long after the separation agreement was signed, or at least until the judgment of divorce became final at the end of the ninety-day nisi period on August 4, 1999.

By complaint filed on May 3, 2002, Vinci brought this action against Byers alleging legal malpractice and the intentional and negligent infliction of emotional distress. Byers filed a motion for summary judgment on all counts, asserting that there were no material facts in dispute and that Vinci's claims were barred by the statute of limitations. Based on Vinci's deposition testimony that he no longer trusted or had confidence in Byers as of June 30, 1998, when it became clear that Vinci's nondisclosure of the referral fee would result in harm, a Superior Court judge ruled that the continuing representation doctrine did not apply to this case and that Vinci's claims were barred by the applicable statute of limitations.[9]

*Law.* "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Highlands Ins. Co.* v. *Aerovox Inc.*, 424 Mass. 226, 232 (1997), quoting from Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). "The moving party bears the burden of proving that there are no material issues of fact and that he is entitled to judgment as a matter of law." *Highlands Ins. Co.*, 424 Mass. at 232, citing *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989).[10]

"The statute of limitations applicable to a legal malpractice

---

[8]Vinci claims that in order to obtain his consent to the separation agreement, Byers offered to waive $20,000 of his legal fee, which was, indeed, waived.

[9]The judge did not discuss the emotional distress claim. On appeal, Vinci does not address its dismissal, which is, thus, deemed waived. While Vinci indicated below that he intended to seek to amend his complaint to add a claim under G. L. c. 93A, he did not do so.

[10]Vinci cannot create a disputed issue of fact by submitting an affidavit that

claim begins to run when a client 'knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer's conduct.' " *Lyons*, 436 Mass. at 247, quoting from *Williams* v. *Ely*, 423 Mass. 467, 473 (1996). "At its root meaning, appreciable harm is 'injury, loss or detriment' that is 'capable of being measured or perceived.' " *Kennedy* v. *Goffstein*, 62 Mass. App. Ct. 230, 233 (2004), quoting from Black's Law Dictionary 97, 722 (7th ed. 1999). "The plaintiff need not know the full extent of [his] injury for a cause of action to accrue and for the statute of limitations to begin running." *Taygeta Corp.* v. *Varian Assocs.*, 436 Mass. 217, 229 (2002). The standard applied when assessing knowledge or notice is that of a "reasonable person in the plaintiff's position." *Ibid.*, quoting from *Riley* v. *Presnell*, 409 Mass. 239, 245 (1991).

"If [the] defendant pleads the statute of limitations and demonstrates that the action was commenced more than three years after the date of the plaintiff's injury, the plaintiff has the burden of proving that the facts take the case outside of the statute of limitations." *Williams*, 423 Mass. at 474. Although the question when the cause of action accrued typically presents a question of fact, when the facts regarding discovery of harm are undisputed, the question may be decided as matter of law. See *Lyons*, 436 Mass. at 249.

The continuing representation doctrine "tolls the statute of limitations in legal malpractice actions where the attorney in question continues to represent the plaintiff's interests in the matter in question." *Murphy* v. *Smith*, 411 Mass. 133, 137 (1991). The doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." *Lyons*, 436 Mass.

contradicts his earlier sworn testimony. See *O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993); *American Employers' Ins. Co.* v. *Horton*, 35 Mass. App. Ct. 921, 923 n.2 (1993); *Geller* v. *Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 121 n.2 (1997). The judge did not grant Byers's motion to strike certain portions of an affidavit submitted by Vinci after Vinci's deposition, but disregarded and excluded from the facts all portions of the affidavit that contradicted his deposition testimony. The judge did not act improperly. See *O'Brien*, 34 Mass. App. Ct. at 906.

at 249-250, quoting from *Murphy*, 411 Mass. at 137. "The doctrine has no application, however, where the client actually knows that he suffered appreciable harm as a result of his attorney's conduct. If the client has such knowledge, then there is no 'innocent reliance which the continued representation doctrine seeks to protect.' " *Lyons*, 436 Mass. at 250, quoting from *Cantu* v. *St. Paul Cos.*, 401 Mass. 53, 58 (1987).[11]

*Discussion.* Vinci filed this action against Byers on May 3, 2002. Therefore, in order to fall within the three-year statute of limitations, the underlying cause of action must have accrued after May 3, 1999. See G. L. c. 260, § 4. Fatal to Vinci's claims are the notable number of occasions prior to May 3, 1999, that gave Vinci actual knowledge that he had suffered appreciable harm as a result of Byers's advice.

For example, Vinci testified in his deposition that after the meeting of Byers, himself, his wife, and her attorney on June 30, 1998, when Vinci revealed the existence of the $228,000 referral fee to his wife's attorney, he "felt that [his] whole defense of this case was compromised, and that [he] was losing faith in Mr. Byers to represent [him] diligently." At this point, as the judge found, the statute of limitations was triggered, as Vinci had actual knowledge that as a result of Byers's advice, Vinci's position in his divorce case had been negatively affected. Although Vinci did not yet know the full extent of the harm, the statute of limitations had begun to run by this point, see *Taygeta Corp.*, 436 Mass. at 229, almost four years before Vinci filed this action against Byers.[12]

The judge, in fact, was being generous to Vinci, as the meeting on June 30, 1998, was neither the first nor the last point at

_____

[11]In *Lyons*, 436 Mass. at 248, the actual knowledge of the plaintiff, a lawyer, that the defendant law firm's alleged malpractice would cause him harm, and his realization that the attorneys in the law firm "didn't know what they were doing," was sufficient to trigger the statute of limitations on his legal malpractice claim.

[12]*Spilios* v. *Cohen*, 38 Mass. App. Ct. 338 (1995), is not contra. There, another case involving legal malpractice based upon an underlying divorce action, the plaintiff had misgivings about her attorney shortly before trial and tried unsuccessfully to discharge him. The statute of limitations did not begin to run because it was impossible to know until after trial whether the defendant-attorney's decision to reject a settlement offer and proceed to trial was indeed detrimental to the plaintiff.

which Vinci knew or should have known that Byers's advice not to reveal the referral fee was improper and would cause him harm. All of the following events occurred prior to May 3, 1999, three years before Vinci filed suit on May 3, 2002: (1) on January 16, 1997, December 3, 1997, and May 21, 1998, he apparently committed perjury by signing financial statements under the penalties of perjury[13]; (2) on April 1, 1998, Vinci received an opinion from another attorney that interest and penalties were accruing from the IRS on the referral fee; (3) on April 27, 1999, Vinci entered into a separation agreement that he perceived to be very unfavorable; and (4) Vinci never recovered the full amount of the loan he made to his high school friend after it became due ninety days after January 23, 1997. There were, thus, several occurrences prior to May 3, 1999, that gave Vinci actual knowledge of Byers's alleged malfeasance and of the fact that he had suffered injury as a result. For the purposes of this opinion we need not decide which of them initially triggered the statute of limitations.

Vinci, however, urges us to apply the continuing representation doctrine to his case. He claims that the statute of limitations began to run — at the earliest — on May 4, 1999, when the Probate and Family Court approved the separation agreement. In order for the continuing representation doctrine to apply, Vinci would have had innocently to rely on Byers's advice and could not have known that he "suffered appreciable harm as a result of his attorney's conduct." *Lyons*, 436 Mass. at 250. Simply, as an attorney, Vinci should have known, among other things, that Byers's alleged advice to submit false financial statements and commit fraud on the tribunal was both wrong and harmful to him.[14] The continuing representation doctrine does not apply here.

Summary judgment correctly entered.

*Judgment affirmed.*

---

[13]See note 6, *supra.*

[14]See also *Choquette* v. *Isacoff, ante* 1, 3 (2005) (in pari delicto rule, which "bars a plaintiff who has participated in wrongdoing from recovering damages for loss resulting from the wrongdoing," extended to legal malpractice claims).