Kern, Leila R, J.
INTRODUCTION
The plaintiff, Bernard Baran, filed this action against the defendants, the estate of Leonard Conway, David O. Burbank, and Cain, Hibbard, & Myers, P.C., in January of 2010 alleging criminal malpractice.[2] The matter is before this court on defendants David Burbank and Cain, Hibbard, & Myers, P.C.’s Motion to Dismiss. For the reason discussed below, the motion is DENIED.
BACKGROUND
Bernard Baran, a teacher’s assistant at the Early Childhood Development Center (“ECDC”) was convicted on January 30, 1986 of three counts of child rape and five counts of indecent assault and battery on a child. He maintained his innocence throughout the trial. Mr. Baran was sentenced to three concurrent life sentences as well as five concurrent sentences of eight to ten years. The children were between two and five years old at the time of the alleged incidents and testified at trial three months after complaining of sexual abuse. Attorney Leonard Conway represented Mr. Baran during the trial and attorney David O. Burbank’s services were rendered on appeal.
Boy A was the first to accuse Mr. Baran of molestation.[3] The father of Boy A, however, had complained to ECDC about Mr. Baran’s homosexuality only three weeks before his arrest. While the ECDC Board of Directors did discuss the concerns regarding a homosexual in the classroom and his possible termination, it is unclear if they took any action. After the allegations surfaced, Boy A was brought to the Berkshire Medical Center on October 6, 1984, for an examination. That same night, the mother of Girl B, a board member of ECDC who had herself been abused, was informed about the accusations and reported to the police that her daughter may have been molested. Mr. Baran was arrested the next day on two counts of indecent assault and battery, which stemmed from accusations by both children.
The arrest was widely publicized and ECDC sent several letters to parents about the accusations, hosted a “good touch, bad touch” puppet show, and arranged for support groups for parents and children. Thereafter, four more children made allegations: Boys C and D, and Girls E and F. Each child was interviewed multiple times by parents, DSS investigators, police officers, therapists, rape crisis center workers, and prosecutors. The interviews, some lasting up to forty minutes, were videotaped. The grand jury, however, was only presented with seven minutes of substantially edited video testimony that did not show the children stating that Mr. Baran had not abused them, accusing others of abuse, or claiming that others witnessed the alleged acts. The unedited tapes also display the children being distracted, re-focused by suggestive questioning, and assisted by their parents.-[4]
Before trial, the prosecutor filed a certificate of discovery listing thirty-eight prospective witnesses. Mr. Baran’s trial attorney, Mr. Conway, filed only a bill of particulars and motions to sever and dismiss, all of which were denied on January 18, 1985, three days before the start of trial. On that same day, the court conducted an in-chambers hearing regarding the competency of the child complainants and Mr. Conway waived Mr. Baran’s presence at this hearing.
At trial, the Commonwealth called twenty-nine witnesses and Mr. Baran’s trial counsel had not interviewed any of them. Boy A, one of the original complainants, was dismissed from the trial for his inability to relate any incriminating information after being found to have had gonorrhea; Mr. Baran had no history of the disease and tested negative for it. Trial counsel, however, made no motion for a mistrial and did not move to strike the testimony of any witnesses who supported only Boy A’s allegations.
Six “fresh complaint” witnesses testified on behalf of Girl B, but limiting instructions were only given *260 contemporaneously In conjunction with two of the witnesses and were inadequate. Defense counsel did not object to or ask for limiting instructions regarding the fresh complaint witnesses who testified on behalf of Boy C and Girls E and F.
Mr. Baran, through his third attorney to represent him in this matter, filed a motion for new trial on June 18, 2004 contending that he did not receive a fair trial. On June 13, 2006 this court (Fecteau, J.) vacated the sentences and ordered a new trial. Commonwealth v. Baran, No. 18042-51, slip op. (Mass.Super.Ct. June 13, 2006). Mr. Baran’s new counsel claimed ineffective assistance of counsel stemming from a multitude of failures and missteps by trial and appellate counsel, including but not limited to Mr. Conway’s
failure to properly investigate the alleged offenses, his failure to seek meaningful discovery from the Commonwealth and any assistance from experts in child psychology, [his failure] to properly prepare for trial, [and his failure] to develop evidence that would support the defense that the evidence was unreliable and was the creature of an unfair climate of hysteria, homophobia and suggestion. The defendant also claims that trial counsel failed to assert Mr. Baran’s constitutional right to a public trial. There are other complaints that, while particular to certain children and not common to all, the effect of which is suggested as unmeasurably prejudicial and damaging on all counts, such as that counsel failed to attempt to exclude the inflammatory evidence that one child had contracted gonorrhea, and failed, after the indictments concerning that child were dismissed, to request a mistrial or to strike or remove from the jury’s consideration the inflammatory evidence regarding gonorrhea.
Baran, No. 18042-51 at 30-31. Mr. Baran also pointed out that trial counsel failed to object to the substitution of an undisclosed witness, to request proper fresh complaint limiting instructions, to object to improperly excessive or repetitive fresh complaint testimony, to assert Mr. Baran’s right to a probable cause hearing or meaningful discovery, and to take advantage of inconsistencies in the evidence.
This court (Fecteau, J.) found that the central issue and sole defense at trial was the credibility of the child witnesses. Trial counsel, however, made no effort to explain to the jury that multiple interviews and leading questions may influence testimony or to object to the parents giving fresh complaint testimony immediately after accompanying his or her child to the witness stand. Furthermore, the apparent inconsistencies between each child’s multiple statements were not addressed.
' This court further found that trial counsel erred in multiple respects. Most notably, Mr. Conway failed to obtain or use the unedited videotape testimony of each child. On cross examination of the witnesses, he made no use of the children’s repeated denials of any alleged wrongful conduct nor did he mention the leading nature of the questions. Even without any questioning from counsel, showing the unedited tapes at trial would have impacted the credibility of the child witnesses and would have had a profound effect on the jury and the trial. Trial counsel also failed to retain an expert who would have been able to identify the leading questions, explain their harmful nature, question the use of anatomically correct dolls, and challenge opposing testimony on the capacity of children to tell the truth.
The two experts the Commonwealth brought in to testify on the credibility of minor complainants also testified as fresh complaint witnesses. One expert, Jane Satullo, was hardly qualified, holding a masters degree “with special emphasis on child and adolescent psychotherapy” and having work experience at the Rape Crisis Center full time for one year and part time for another year. Baran, No. 18042-51 at 64-65. Ms. Satullo opined during trial, without objection, that she “think[s] it’s possible to present an idea which the child has not consciously thought about before . .. but it’s also my experience that any child who is able to tell a story and repeat its details over a period of time[,] then there is a validity to that story.” Id. at 65. Furthermore, her testimony dismissed the early stages of the interviews, where the children were non-responsive or denied that sexual contact occurred, as merely “getting comfortable.” Id. at 71. Both experts were allowed to testify not only as to the behavioral symptoms of a sexually abused child, which is generally admissible, but also as to the general credibility of sexually abused children and the children interviewed. Trial counsel did not object to the experts’ qualifications or their testimony and his cross-examination of Ms. Satullo is contained in a mere eight pages of trial transcript; cross-examination of Dr. Suzanne King, the other expert, consisted of two and one-half pages of transcript.
Trial counsel also improperly waived indictment and a preliminary hearing regarding the allegations of Boy C. Mr. Baran was not formally charged on those allegations until the first day of trial, and those charges yielded only two pages of discovery. Mr. Baran’s rights were further violated when the judge closed the courtroom sua sponte, both when the children were testifying and possibly while others testified as well. The competency hearing for the child victims was closed to the public, and Mr. Conway improperly waived Mr. Baran’s presence at that hearing, in direct violation of his Sixth Amendment right.
Prosecutorial misconduct was rampant throughout the trial. First, the Assistant District Attorney brought forth this case based on hysteria, coerced, unbelievable child testimony, and egregiously erroneous expert testimony. Second, the prosecutor did not allow the full-length videotaped interviews to be discovered and only shared edited copies.[5] Third, in his closing argu- *261 merits, he mischaracterized his expert witnesses as learned and highly professional while implying that they had vouched for and had special knowledge of the children’s truthfulness. Finally, the prosecutor also based his closing statements on the fact that Boy A, dismissed from the case on directed verdict, had gonorrhea and told the jury that just because Mr. Baran did not test positive for the disease did not mean that he did not give it to the child.
The assistance of counsel on appeal was grossly ineffective because Mr. Baran’s appellate attorney raised none of these obvious deficiencies at trial, effectively waiving the claim of ineffective assistance of counsel. Furthermore, the parents of one of the victims had previously retained appellate counsel’s services for litigation of the very incident in question, a fact concealed from Mr. Baran and the Court of Appeals throughout the appeals process. The ineptitude of Mr. Baran’s attorneys, both during trial and on appeal, amounted to a denial of his Sixth Amendment right to assistance of counsel, a determination heavily stressed by this court’s decision (Fecteau, J. June 13, 2006).
Released on $50,000 bail after being granted a new trial by this court (Fecteau, J.) Mr. Baran was subject to strict probation, including GPS monitoring, for approximately three years while the Commonwealth appealed the decision. On May 15, 2009, the Appeals Court affirmed. Commonwealth v. Baran, 74 Mass.App.Ct. 256 (2009). On June 9, 2009, the Commonwealth entered a nolle prosequi and Mr. Baran commenced this action for criminal malpractice less than six months later.
DISCUSSION
I. Standard of Review
A motion to dismiss for failure to state a claim permits “prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiffs claim is legally insufficient.” Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 748 (2006). When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. See Nader v. Citron, 372 Mass. 96, 98 (1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact). ..” Iannacchino, 451 Mass. at 636. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
II. Timeliness
The sole issue in defendants’ Motion to Dismiss is the timeliness of Count I, plaintiffs claim of criminal malpractice, pursuant to the statute of limitations in G.L.c. 260, §4. A prima facie case of criminal malpractice must establish (a) an attorney-client relationship out of which arose (b) a duty to exercise a reasonable degree of care and skill in the performance of the attorney’s legal duties, (c) a violation of that duty, and (d) reasonably foreseeable loss or damages caused by the attorney’s negligence. See Correia v. Fagan, 452 Mass. 120, 127 (2008), and cases cited. The Supreme Judicial Court held in Glenn v. Aiken, 409 Mass. 699, 704 (1991), that a plaintiff in a criminal malpractice claim has the burden of proving innocence in the underlying crime. Until such innocence is proven, the criminal is presumed to be the “but-for” cause of his or her incarceration and cannot prove damages caused by the attorney’s negligence. See id. Furthermore, the doctrine of collateral estoppel may be invoked to preclude a convicted criminal defendant from relitigating an issue decided in the criminal prosecution. See Aetna Casualty & Surety Co. v. Niziolek, 395 Mass. 737, 742 (1985).
The statute of limitations specifically requires “actions of contract or tort for malpractice . . . [to] be commenced only within three years next after the cause of action accrues.” G.L.c. 260, §4. The Massachusetts Supreme Judicial Court has adopted the discovery rule for determining when an action accrues. See Lyons v. Nutt, 436 Mass. 244, 247 (2002). A statute of limitations begins to run “when a client ‘knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer ‘s conduct.’ " Id., citing Williams v. Ely, 423 Mass. 467, 473 (1996). The issue presented here requires reconciliation between the criminal malpractice doctrine, set forth in Correia, and the §4 statute of limitations. See G.L.c. 260, §4; Correia, 452 Mass. at 128.
A. Criminal Malpractice
Correia holds that a criminal plaintiff must prove his or her actual and not merely legal innocence in civil court to recover for criminal malpractice. See Correia, 452 Mass. at 128. This great burden placed on the criminal plaintiff by the Supreme Judicial Court means that actual innocence cannot be established until there is no possibility of receiving a guilty verdict from a juiy. See id. In the Correia case, the criminal plaintiff established actual innocence by showing that a jury acquitted him of the underlying criminal charges. See id. at 132.
In the case at bar, however, the Commonwealth entered its nolle prosequi before Mr. Baran had the *262 opportunity to be acquitted by a jury. Black’s Law Dictionary explicitly states that a nolle prosequi is not an acquittal nor is it equivalent to one. See Black’s Law Dictionary 1146 (9th ed. 2009). Massachusetts, however, requires that a nolle prosequi “be accompanied by a written statement . . . setting forth the reasons for [its] disposition.” Mass.R.Crim.P. 16(a). Thus, merely acknowledging the existence of a nolle prosequi may not prove actual innocence, but the accompanying statement may assist in determining whether the charges were dropped due to either the defendant’s actual innocence or legal innocence. Actual innocence is defined as “[t]he absence of facts that are prerequisites for the sentence given to a defendant.” Black’s Law Dictionary 859 (9th ed. 2009). In contrast, legal innocence is defined as “[t]he absence of one or more procedural or legal bases to support the sentence given to a defendant.” Id.
The Commonwealth, in adhering to Rule 16(a), stated that the nolle prosequi is “in the best interests of justice.” See Revised Memorandum of Law in Support of Defendants David O. Burbank and Cain, Hibbard & Myers, P.C.’s Motion to Dismiss, Exh. C. The District Attorney found that further prosecution of Mr. Baran would be unjust, implying that the nolle prosequiwas entered because of the absence of certain facts supporting the underlying charges. See id. Acknowledging the absence of these facts is tantamount to an admission by the Commonwealth that Mr. Baran is actually innocent. See Black ‘s Law Dictionary 859 (9th ed. 2009). Moreover, if Mr. Baran were legally innocent, the Commonwealth would have cited procedural or legal bases like stale evidence or the unavailability of witnesses as reasons for entering the nolle prosequi.
B. Statute of Limitations
Since this court finds that Mr. Baran could not have brought a successful criminal malpractice claim until after entry of the nolle prosequi, the issue then becomes the application of the statute of limitations. Under the discovery rule, this action began to run when Mr. Baran reasonably should have known that he sustained appreciable harm as a result of his lawyers’ conduct. See Lyons, 436 Mass. at 247. Knowledge is defined as “[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact.” Black’s Law Dictionary 950 (9th ed. 2009). Mr. Baran must have known that he sustained appreciable harm after being convicted by the jury because he had no substantial doubt that he had been punished for acts he had not committed. The discovery rule, however, does not merely require knowledge of Harm, but also that it must have caused the harm. Any number of factors present in the case, including prosecutorial misconduct and judicial impropriety, could have created a substantial doubt as to what caused it.
It was not until the publication of this court’s opinion (Fecteau, J. June 13, 2006) that Mr. Baran could possibly have known his harm resulted from the lawyers’ conduct because, at that point, his claim of ineffective assistance of counsel was justified. As the decision was appealed, though, the opinion lacked the necessary finality for one reasonably to rely upon it as knowledge, as required by the discovery rule. See id. Mr. Baran remained under strict probation after his sentence was vacated and still faced the imposition of further punishment, therefore making it unreasonable to believe without a substantial doubt that the attorneys were the cause of his harm. Thus, the statute of limitations did not accrue until after the nolle prosequi was entered because only then was there no possibility of further proceedings on the issue and this court’s opinion (Fecteau, J. June 13, 2006) stood as final. Therefore, this claim is not time-barred.
III. Defendants’ Arguments
A. Legal Fiction
Defendants cite case law that brands the above reasoning “legal fiction” because, allegedly, there is no way for a wrongfully convicted defendant not to know that he has been harmed. See Gebhardt v. O’Rourke, 510 N.W.2d 900, 906 (Mich. 1994). But the “legal fiction” argument is based on a misinterpretation of the discoveiy rule. The wrongfully convicted defendant must not only realize harm, but also be certain that the lawyer’s poor advocacy is the but-for cause of that harm. See Noske v. Friedberg, 670 N.W.2d 740, 745 (Minn. 2003). Therefore, this court joins the majority of states in rejecting the “legal fiction” argument. See, e.g., Gebhardt v. O’Rourke, 510 N.W.2d 900, 906 (Mich. 1994).
B. Two-Track System
Defendants also argue that Mr. Baran’s claim should be time-barred based on the social policy underlying the statute of limitations: preventing stale claims from being litigated, especially considering the possibility for spoliation of evidence. See Noske, 670 N.W.2d at 746. They therefore propose the adoption of a “two-track" system and cite over a dozen states that have implemented it.[6] The two-track system requires a convicted criminal plaintiff who believes he or she has a claim of criminal malpractice to file suit in civil court within the applicable limitations period, possibly before post-conviction relief is granted. See Gebhardt, 510 N.W.2d at 907. The criminal plaintiff then must move to stay the civil trial until the criminal proceedings have been completed.[7] See id. Alternatively, the one-track system would follow Mr. Baran’s approach of waiting until the criminal plaintiff can prove all elements of the claim before filing suit alleging criminal malpractice. See id.
The two-track system would be detrimental to judicial economy because convicted criminals, known to be rather litigious, will wish to preserve their rights to criminal malpractice suits and quickly file claims *263 against their former attorneys. See Shaw v. State, 816 P.3 1358, 1361 (Alaska 1991). These parties would inundate the judicial system with motions to stay, thereby clogging the dockets and leaving open a myriad of unresolved cases for what could be decades. See id. Furthermore, the possibility of a number of pending malpractice suits could discourage attorneys from practicing criminal law. Weighing these policy factors and considering that the discovery rule allows for accrual of the statute of limitations after actual innocence is proven, this court will not adopt the two-track system and, thus, must deny defendants’ Motion to Dismiss. See Correia, 452 Mass. at 128; Noske, 670 N.W.2d at 746.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants David O. Burbank and Cain, Hibbard, & Myers, P.C.’s Motion to Dismiss is DENIED

 The phrase “criminal malpractice” has been adopted by the Massachusetts Supreme Judicial Court to refer to legal malpractice in the course of defending a client accused of a crime. Correia v. Fagan, 452 Mass. 120, 126 n.12 (2008).

 In this court’s previous ruling (Fecteau, J. June 13, 2006), the alleged child victims were referred to as Boy A, Girl B, Boys C and D, and Girls E and F so as to comply with G.L.c. 265, §24C. This nomenclature remains unchanged.

 Mr. Baran was not granted access to the unedited tapes of Boys A, C, and D and Girls B and F until September 17, 2004.

 The prosecutor is now sitting as a Justice of the Massachusetts Superior Court.

 Among those states are: California, Coscia v. McKenna & Cuneo, 25 P.3d 670 (Cal. 2001); Colorado, Rantz v. Kaufman, 109 P.3d 132 (Colo. 2005); Maryland, Berringer v. Steele, 758 A.2d 574 (Md.Ct.Spec.App. 2000); Michigan, Gebhardt v. O'Rourke, 510 N.W.2d 900 (Mich. 1994); Montana, Ereth v. Cascade County, 831 P.3d 463 (Mont. 2003); Nebraska, Seevers v. Potter, 537 N.W.2d 505 (Neb. 1995); New Mexico, Duncan v. Campbell, 936 P.2d 863 (N.M.Ct.App. 1997); and Tennessee, Gibson v. Trant, 58 S.W.3d 103 (Tenn. 2001).

 Unlike Massachusetts, many of the states on whose precedent the defendants rely have statutes of limitations that allow for accrual after the initial conviction. There, the two-track system becomes more logical than as applied in this case. Here, the discovery rule does not allow accrual of the statute of limitations until after actual innocence is proven. See Lyons, 436 Mass, at 247.