Leibensperger, Edward P., J.
In this medical malpractice action, the defendant dentist, Mary Ann Del-Cupolo, moves for dismissal on the ground that the claims of plaintiff, Missy Westhaver, are barred by the applicable statutes of limitations or repose. The key facts regarding the dates of treatment of Westhaver by Dr. DelCupolo are not in dispute. As described below, the statute of repose operates to bar some of Westhaver’s claims. With respect to the statute of limitations, however, this case presents the issue of whether the “continuing treatment” doctrine acts to toll the running of the statute of limitations that would otherwise bar most if not all of Westhaver’s claims. It appears that whether Massachusetts recognizes the continuing treatment doctrine in a medical malpractice case is a question of first impression, left open by precedent from the Supreme Judicial Court and Appeals Court. For the reasons stated below, I find that there are genuine issues of fact that need to be resolved to determine whether the continuing treatment doctrine should apply. Thus, summary judgment must be denied.
BACKGROUND
The summary judgment record presents the following undisputed, material facts.
Westhaver became a patient of Dr. DelCupolo in February 2001. From that date until Westhaver’s last appointment with Dr. DelCupolo on August 10, 2009, Westhaver remained a patient of Dr. DelCupolo. Initially, Westhaver’s treatment pertained to work on crowns. In May 2003, however, Westhaver was fitted for a partial upper denture. In August2003, Westhaver received a lower partial denture from Dr. DelCupolo. Later, in 2006, Westhaver agreed to implants supported by a full upper denture fitted by Dr. DelCupolo. The full upper denture had plastic clips that fit into a bar implanted into Westhaver’s palate. Within a few months, in October 2006, Westhaver experienced that the clips began to fall out and the upper denture appliance would slip.
In February 2007, Westhaver presented to Dr. Del-Cupolo with problems with the upper denture. Westhaver reported that she had lost a clip that attached the denture to the implants. Also, it was found that Westhaver was experiencing some cracking of the palate in connection with the upper denture. In fact, the upper denture itself cracked. Dr. DelCupolo undertook to repair the upper denture.
In March 2007, Dr. DelCupolo discussed with Westhaver a plan to install a new lower partial denture. From May to June 2007, Westhaver presented to Dr. DelCupolo multiple times to have temporary crowns “taken in and taken out” while the lower partial denture was constructed. On June 7, 2007, the lower partial denture was inserted. Following the insertion, in later June and in October 2007, Westhaver returned to Dr. DelCupolo to have crowns cemented and recemented. Westhaver noted that the new lower partial denture frequently did not stay in place because there were crowns that were loose.
Westhaver could not wear the new lower denture. It was difficult for her to go to work. Westhaver, in the period prior to October 2007, experienced difficulty eating because of problems with her dentures. She also experienced choking episodes allegedly because of the dentures.
Prior to October 18, 2007, Westhaver was unhappy with Dr. DelCupolo’s care and she considered changing dentists to resolve the problem. In fact, as early as March 2007, Westhaver considered initiating a lawsuit against Dr. DelCupolo because she believed Dr. DelCupolo’s care was substandard. Nevertheless, Westhaver continued to return to Dr. DelCupolo for treatment because she trusted the doctor and believed that Dr. DelCupolo was working to fix the problem and would provide her with appliances that would work. In August 2008, Dr. DelCupolo provided Westhaver with a duplicate full upper denture. From December 2008 to December 2009, Westhaver continued to experience problems with the implant supported upper denture because of loss of clips and the need to repair the appliance. She continued treatment with Dr. Del-Cupolo during that period and the appliance was repaired as needed. Dr. DelCupolo also needed to re-cement the crowns on two teeth during this period, allegedly as a result of the misfitted denture.
On January 25, 2010, Westhaver began treatment with Dr. Gary Nankin for new dentures. Dr. Nankin recommended construction of a new upper denture and a new lower partial denture.
*478 On December 30, 2010, Westhaver commenced this action against Dr. DelCupolo for negligent treatment. Westhaver has proffered an expert opinion to the effect that Dr. DelCupolo negligently constructed and attached the dentures.
ANALYSIS
Two issues are presented by the motion for summary judgment. First, does the statute of repose portion of G.L.c. 260, §4,[1] bar any claims by Westhaver for treatment prior to December 30, 2003? Second, does the three-year statute of limitations in G.L.c. 260, §4 bar Westhaver’s claims for treatment prior to December 30, 2007?
Statute of Repose
Westhaver concedes that the statute of repose bars any claim she may have for treatment prior to December 30, 2003 (seven years prior to the commencement of this action). The Supreme Judicial Court expressly rejected the continuing treatment doctrine as a vehicle to toll the application of the statute of repose. Rudenauer v. Zaftropoulos, 445 Mass. 353, 357 (2005). There, the Court found that the effect of the statute of repose language in c. 260, §4 “is to place an absolute time limit on the liability of those within (its) protection and to abolish a plaintiffs cause of action thereafter, even if the plaintiffs injuiy does not occur, or is not discovered, until after the statute’s time limit has expired.” Id. at 357, quoting cases. Noting that previous decisions of the Supreme Judicial Court held that statutes of repose are not subject to any form of tolling, including tolling by the “discovery rule” for the accrual of tort actions, the Court emphasized how the statute of repose “stands in contrast to a statute of limitations, which governs the time within which a legal proceeding must be commenced after the cause of action accrues.” Id. at 358 (emphasis in original). The Court did not address the continuing treatment doctrine as it might apply to the accrual of a cause of action under the statute of limitations. Based on Rudenauer, summary judgment shall enter dismissing any and all claims arising from acts of Dr. DelCupolo prior to December 30, 2003.
Statute of Limitations
Whether Westhaver’s claims of malpractice are barred by the three-year statute of limitations depends, if not entirely, in large part,[2] by the application of the continuing treatment doctrine. The continuing treatment doctrine, generally speaking, could toll the running of the statute for the period when the doctor is treating, or taking responsibility for, the same or related condition for which the plaintiff was allegedly treated negligently. The parties agree that there is no direct and binding precedent in Massachusetts either adopting or rejecting the continuing treatment doctrine in a medical malpractice case. Dr. DelCupolo points to a Rule 1:28 decision of the Appeals Court in Wersal v. Nathanson, 83 Mass.App.Ct. 1131, 2013 MassApp. Unpub. LEXIS 562 (May 15, 2013), where the court affirmed the dismissal of a medical malpractice action because the cause of action was not saved by the discovery rule. The Wersal court also addressed an argument, not raised in the trial court below, that the continuing treatment doctrine saved the cause of action. The court held that the argument was waived. Nevertheless, in dictum, the court stated that “Massachusetts courts do not recognize the viability of the continuous treatment doctrine,” citing Rudenauer. Because Wersal was a Rule 1:28 decision, and because the statement regarding the continuing treatment doctrine was dictum, the decision does not represent binding precedent.
Guidance as to how the Supreme Judicial Court might approach this issue comes from Murphy v. Smith, 411 Mass. 133 (1991). There, in a legal malpractice case, the Court applied the continuing representation doctrine to toll the running of the three-year statute of limitations. Id. at 138. The Court quoted with approval a decision of the New York Court of Appeals: ‘The doctrine ‘recognizes that a person seeking professional assistance has a right to repose confidence in the professional’s ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.’ ” Id. at 137, quoting Greene v. Greene, 56 N.Y. 2d 86, 94 (1982).
Murphy was further explained and, perhaps, limited by the Court in Lyons v. Nutt, 436 Mass. 244 (2002). In Lyons, also a legal malpractice action, the Court held that the continuing representation doctrine does not apply where the client “actually knows that he suffered appreciable harm as a result of his attorney’s conduct.” If the client has such knowledge, then there is no “innocent reliance which the continued representation doctrine seeks to protect.” Id. at 250, quoting Cantu v. St Paul Cos., 401 Mass. 53, 58 (1987). In an effort to harmonize the seemingly inconsistent holdings of Murphy and Lyons, the Court stated that while the plaintiff in Murphy “reasonably should have known” of his cause of action (which would be enough to begin the running of the statute of limitations under the discovery rule), he did not have “actual knowledge” of the cause of action. Thus, Murphy gave the plaintiff the benefit of the continuing representation doctrine while the plaintiff in Lyons who had “actual knowledge” of the cause of action did not get the benefit. Lyons at 250.
Applying the law of Murphy and Lyons to this medical malpractice case, I find that there is a genuine issue of material fact as to whether Westhaver “actually knew” of her cause of action prior to December 30, 2007, or whether, instead, she only “reasonably should have known” of the cause of action. Thus, if the Massachusetts doctrine of continuing representation in a legal malpractice case is the same as for continuing treatment in a medical malpractice action, summary judgment must be denied. Moreover, as described below, I believe there is good reason to adopt a broader continuing treatment tolling of the statute of limitations in a medical malpractice action.
*479 A twenty-year-old law review article attempted to catalogue the number of states recognizing some form of the continuing treatment doctrine in medical malpractice cases. According to the article, at that time twenty states had adopted, either by statute or by case decision, the continuing treatment doctrine in some form. 78 Minn.L.Rev. 943,954, n. 52 and 53 (1993-94). Aseminal case for the doctrine comes, as did Greene relied upon in Murphy, from the New York Court of Appeals, Borgia v. City of New York, 12 N.Y.2d 151 (1962). In Borgia, the court held that “when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint, the ‘accrual’ comes only at the end of the treatment.” Id. at 321. As a matter of fairness, the court noted, a patient should not have to interrupt corrective efforts by the medical professional to preserve a timely cause of action. Id. at 321-22. This rationale mirrors the language of the New York Court of Appeals quoted by the Supreme Judicial Court in Murphy to the effect that while continuing under the care and guidance of a professional a patient/client should be able to place her trust with the professional even if she harbors doubts about prior treatment/representation that would be sufficient to start the running of the statute of limitations under the discoveiy rule.
A federal judge in Stephenson v. United States, 147 F.Sup.2d 1106 (D.New Mexico 2001), articulated persuasive reasons for the continuing treatment doctrine in connection with a medical malpractice claim under the Federal Tort Claims Act. One reason for the doctrine concerns the patient’s ability to discover the facts surrounding her injury while still being treated by the same doctor who allegedly caused the injury in the first place. But two additional reasons support the adoption of the doctrine even where a patient has sufficient knowledge to satisfy the discovery rule so as to begin the running of the statute. The doctrine prevents interference with the doctor-patient relationship where there is continuing treatment. Moreover, the doctrine gives the doctor an opportunity to treat and fix, or heal, any injury the doctor may have caused. Id. at 1109. “There is clearly a common-sense appeal to the idea that patients should be encouraged to follow a course of treatment for a period of time, without poisoning the physician-patient relationship by investigating possible malpractice or filing a claim... Encouraging patients to trust in the treatment and continue it will facilitate a more complete recovery, possibly leading to fewer malpractice cases.” Id. at 1111.
The rationale described in Stephenson is particularly applicable to the treatment of Westhaver by Dr. DelCupolo. Westhaver experienced problems with the upper denture placed by Dr. DelCupolo within a few months of its installation, in October 2006. Thereafter, Dr. DelCupolo’s care and treatment included numerous efforts to repair the dentures and to fix the problem complained of by Westhaver. It was not until December 2009, more than three years after experiencing problems, that Westhaver finally gave up going to Dr. DelCupolo and found a new dentist. Presumably, had Dr. DelCupolo been able to remedy the problem during those three years there might not have been a malpractice claim. Westhaver was willing to put her trust in Dr. DelCupolo even though she had doubts about whether Dr. DelCupolo’s prior treatment was appropriate.
I agree with the rationales explicated in Borgia and Stephenson. Based on Murphy, I believe the Supreme Judicial Court would apply the continuing treatment doctrine to the facts of this case. As a result, the portion of defendant’s motion seeking to bar all of plaintiffs claims as untimely under the statute of limitations must be denied.
CONCLUSION
For the reasons stated above, defendant’s motion for summary judgment is ALLOWED in part and DENIED in part. Summary judgment shall enter barring all claims for malpractice arising from conduct of defendant prior to December 30, 2003. Otherwise, summary judgment is denied.

G.L.c. 260, §4 provides as follows in pertinent part: “Actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists . . . shall be commenced only within three years after the cause of action accrues, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based ...”

It is unclear from plaintiffs pleadings and the opinion of her expert, contained in the summary judgment record, whether Westhaver asserts any claims of malpractice based upon errors or omissions of Dr. DelCupolo in the period after December 30, 2007 (three years before the commencement of this action). The principal theory alleged, however, is the construction, insertion and attachment of the upper and lower dentures that took place in 2006 and 2007, prior to December 30, 2007.