BARBARA RUDENAUER, individually and as administratrix,[1] *vs.*
GEORGIA ZAFIROPOULOS, executor,[2] & another.[3]

Middlesex. October 6, 2005. - November 21, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Repose, Statute of. Wrongful Death. Medical Malpractice. Husband and Wife,*
Consortium. *Negligence,* Medical malpractice, Wrongful death, Causing
loss of consortium, Statute of repose. *Practice, Civil,* Wrongful death,
Claim barred by statute of repose.

This court concluded that the language of G. L. c. 260, § 4, a statute of
repose that provides that in no event may any action for malpractice, error,
or mistake against, inter alia, a physician or hospital be commenced more
than seven years after the occurrence of the act or omission which is the
alleged cause of the injury complained of, was absolute and contained no
"continuous treatment" exception [356-360]; moreover, this court
concluded that the judge in a civil action for wrongful death erred in deny-
ing the defendants' motion for summary judgment, where the plaintiff's
complaint suffered from a complete failure of proof with regard to allega-
tions of negligence that were not barred by the statute of repose [360].

CIVIL ACTION commenced in the Superior Court Department on
August 30, 2001.

A motion for summary judgment was heard by *Kenneth J.
Fishman*, J., and an application for leave to prosecute an
interlocutory appeal was allowed in the Appeals Court by *Mark
V. Green*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Barry D. Lang* for the plaintiff.

---

[1]Of the estate of Dennis Rudenauer.

[2]Of the estate of Panayiotis Zafiropoulos. The complaint in this case was
originally filed against Panayiotis Zafiropoulos on August 30, 2001. A sugges-
tion of death was filed on October 23, 2002, and the plaintiff's subsequent
motion to substitute Georgia Zafiropoulos as executor of his estate was al-
lowed on May 30, 2003.

[3]Waltham Urology Clinic, Inc.

*Edward T. Hinchey (Stacey E. Morris* with him) for the defendants.

*Carl Valvo & Kenneth W. Terrell,* for Professional Liability Foundation, Ltd., amicus curiae, submitted a brief.

COWIN, J. The plaintiff's husband, Dennis Rudenauer, died in 2000 from cancer that allegedly could have been detected and successfully treated had the defendant doctor, Panayiotis Zafiropoulos, properly monitored a kidney condition. In 2001, the plaintiff brought an action against Zafiropoulos and his employer, Waltham Urology Clinic, Inc. (clinic), for wrongful death, pain and suffering, gross negligence, and loss of consortium.[4] Although the claims are substantially based on Zafiropoulos's treatment of Rudenauer in 1990 and 1991, the plaintiff contends that the doctor's duty to conduct follow-up monitoring after 1991, as well as her husband's return to the doctor in 1995, constitute ongoing treatment through 1995. The defendants moved unsuccessfully for summary judgment, claiming that the action was barred by the repose provision of G. L. c. 260, § 4. The Appeals Court granted the defendants leave to appeal from the denial of the motion. We transferred the case to this court on our own motion to determine whether the purported continuing treatment until 1995 relieves the plaintiff of application of the seven-year statute of repose clause of G. L. c. 260, § 4. We conclude that the absolute language of the statute precludes such a result.

*Background.* We summarize the relevant facts of this case as presented to the judge on motion for summary judgment.[5] On February 9, 1990, Rudenauer went to Waltham Weston Hospital & Medical Center with "left flank pain." He had fallen on the snow five days earlier and began noticing pain the day before his visit. Because tests showed blood in his urine and a possible kidney mass, he was instructed to see a urologist.

The following day, February 10, Rudenauer made his first

---

[4]All claims against Waltham Urology Clinic, Inc., are for vicarious liability for the alleged negligence of its employee, Panayiotis Zafiropoulos.

[5]The facts are drawn from letters, memoranda, and factual summaries submitted by the parties, none of which were supported by affidavits. See Mass. R. Civ. P. 56 (a) & (e), 365 Mass. 824 (1974). Neither party raises any issues regarding the record.

visit to Zafiropoulos at the clinic. Zafiropoulos ordered a CT scan on February 11, to rule out a kidney tumor. The CT scan was read as showing a mass lesion most consistent with an intrarenal hematoma, but with a recommendation for follow-up scans to rule out a renal mass of a different type.

Rudenauer continued to see Zafiropoulos over the next twenty-one months, until November 8, 1991, for testing and monitoring of the lesion. Zafiropoulos conducted or ordered the following tests: ultrasounds on February 16 and March 16, 1990; CT scans on March 29 and April 19, 1990; and additional ultrasounds on July 6, 1990, January 18, 1991, and November 8, 1991. The final ultrasound on November 8 "revealed a very nodular left kidney with no definite mass seen." Thereafter, there is no evidence that Rudenauer visited the doctor for over thirty-nine months, nor is there any evidence that Zafiropoulos followed up with him or contacted him in any way.[6]

On February 21, 1995, Rudenauer returned to Zafiropoulos with pain on his left side and "outflow obstruction." Zafiropoulos conducted a series of tests during the next ten months, which, on December 15, 1995, revealed renal adenocarcinoma, dark cell type (cancer). Rudenauer terminated his treatment with Zafiropoulos and another physician removed the kidney on January 15, 1996.

In August, 2000, Rudenauer presented to a third doctor with symptoms that ultimately proved to be fatal metastatic disease. Rudenauer passed away on October 8, 2000. On August 30, 2001, the plaintiff, Rudenauer's widow, filed suit against Zafiropoulos and the clinic for wrongful death, conscious pain and suffering, gross negligence, and loss of consortium. All claims are made under the wrongful death statute and, as such, comply with its three-year statute of limitations. See G. L.

---

[6]The parties argue the case on the basis that, after considering the results of the ultrasound conducted on November 8, 1991, Zafiropoulos asked the patient to return for a follow-up visit in one year, but that Rudenauer did not return at that time and Zafiropoulos did not contact him. The defendants' brief asserts that Zafiropoulos instructed Rudenauer to return in one year, and the plaintiff accepts that assertion by adopting the defendants' description of facts and making arguments based on the alleged request. Whether such a request was made does not affect our analysis.

c. 229, §§ 2, 6. See also *Fowles* v. *Lingos*, 30 Mass. App. Ct. 435, 436-437 (1991).

The plaintiff's expert witnesses would testify that Zafiropoulos failed to act in accordance with then appropriate standards of care as follows. After April 19, 1990, Zafiropoulos should have conducted further CT scans of the lesion rather than monitoring it solely with ultrasounds; moreover, he should have biopsied the kidney when the lesion persisted for months. The witnesses would state that, had such tests been conducted, the cancer would have been detected and, if detected by September, 1994, likely cured. There is a suggestion in the record that Zafiropoulos failed to comply with the standard of care in 1995 by failing to diagnose the problem promptly on Rudenauer's return,[7] but there is no evidence that any act or omission in 1995 was causally connected to Rudenauer's eventual death.

The defendants moved for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), on the ground that the action was barred by the repose provision of G. L. c. 260, § 4. The judge denied the motion, citing a "genuine issue of material fact." As noted, a single justice of the Appeals Court allowed the defendants' motion for interlocutory review, and we transferred the matter here on our own motion.

*Discussion.* "A court must deny a motion for summary judgment if, viewing the evidence in the light most favorable to the nonmoving party [the plaintiff here], there exist genuine issues of material fact or the moving party is not entitled to judgment as a matter of law." *Golub* v. *Milpo, Inc.*, 402 Mass. 397, 400 (1988). See Mass. R. Civ. P. 56 (c).

General Laws c. 260, § 4, second par., provides: "Actions of contract or tort for malpractice, error or mistake against physicians, surgeons . . . hospitals and sanitoria shall be commenced only within three years after the cause of action accrues, *but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object*

[7]The record is unclear on this point, but reading the letter from the plaintiff's expert with all inferences drawn in the plaintiff's favor suggests that the plaintiff might offer evidence of negligence in 1995.

*in the body*" (emphasis supplied). The italicized language constitutes a statute of repose, "[t]he effect [of which] is to place an absolute time limit on the liability of those within [its] protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired." *Nett* v. *Bellucci*, 437 Mass. 630, 635 (2002), quoting *McGuinness* v. *Cotter*, 412 Mass. 617, 622 (1992).

The plaintiff maintains that her claims are not barred by the statute of repose, even to the extent that they are based on acts or omissions that predated her action by more than seven years. She argues that § 4 should be read to include some form of "continuous treatment rule," which would toll the start of the repose period for any negligent acts or omissions until the doctor's treatment of, or responsibility for, the related condition ends. The plaintiff relies heavily on cases from other jurisdictions that involve statutes of limitations. These are not relevant and have no application to our statute of repose. She also refers to cases from a small number of jurisdictions that toll their statutes of repose. For example, Connecticut courts toll the statute of repose during treatment by, or continued duty of, a doctor for the same condition to which his or her alleged negligence is related. See *Blanchette* v. *Barrett*, 229 Conn. 256, 274-275 (1994). Other jurisdictions toll their statutes of repose until the end of a course of continuous negligent treatment if the effects of a series of acts or omissions are so cumulative and inextricable as to render the series actionable as a single, continuing wrong under their State laws. See *Ewing* v. *Beck*, 520 A.2d 653, 662 (Del. 1987); *Cunningham* v. *Huffman*, 154 Ill. 2d 398, 405-406 (1993). We conclude that Massachusetts law is to the contrary and, even were there negligence,[8] the plaintiff no longer has a viable cause of action for any act or omission that occurred seven years before she filed suit.

Our cases have consistently held that statutes of repose are

[8]By considering the plaintiff's arguments, we do not attempt to resolve whether a doctor-patient relationship between Zafiropoulos and Rudenauer existed between the patient's final visit in 1991 and his return in 1995, or, if it did, whether it was negligent for the doctor not to pursue the patient for testing.

not subject to any form of tolling. See *Protective Life Ins. Co. v. Sullivan*, 425 Mass. 615, 631 n.19 (1997). See also *Tindol* v. *Boston Hous. Auth.*, 396 Mass. 515, 517-518 (1986); *Klein* v. *Catalano*, 386 Mass. 701, 702, 710-713 (1982). A repose period begins to run from some "definitely established event," abolishing a plaintiff's cause of action thereafter, even if the injury does not occur, or is not discovered, until after the statute's time limit has expired. See *McGuinness* v. *Cotter*, *supra* at 622, citing *Nissan Motor Corp. in U.S.A.* v. *Commissioner of Revenue*, 407 Mass. 153, 158 (1990); *Klein* v. *Catalano*, *supra* at 702.

A statute of repose stands in contrast to a statute of limitations, which governs the time within which a legal proceeding must be commenced after the cause of action *accrues*. See *Harlfinger* v. *Martin*, 435 Mass. 38, 40-41 (2001). "[T]he determination of when a cause of action accrues, causing the statute of limitations to run, has long been the product of judicial interpretation in this Commonwealth." *Franklin* v. *Albert*, 381 Mass. 611, 617 (1980), citing *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 740 (1978). A statute of repose, on the other hand, itself identifies the event that commences the running of the statutory period, leaving nothing to judicial determination.

Application of a statute of repose can seem harsh. It "may impose great hardship on a plaintiff who has suffered injury and has a meritorious claim," but does not suffer or discover it during the repose period. *Klein* v. *Catalano*, *supra* at 713. See *Harlfinger* v. *Martin*, *supra* at 46-47. However, a statute of repose also secures for some a certainty "that the slate has been wiped clean of ancient obligations" and the need to resist claims based on them. *Klein* v. *Catalano*, *supra* at 709.

The repose provision of G. L. c. 260, § 4, reflects a legislative determination that an absolute time limit is appropriate in medical malpractice actions despite those conflicting values. Its clear language, as supported by its history and purpose, permits no conclusion other than that the Legislature intended to extinguish malpractice claims seven years after negligent acts or omissions even when a doctor's treatment of, or responsibility for, a condition continued beyond the alleged negligence.

Section 4 states the time bar unequivocally: "*in no event*

*shall any* such action be commenced" after seven years. The fact that the Legislature inserted one exception into the statute of repose, for "the leaving of a foreign object in the body," demonstrates that it did not intend other exceptions, including one for continuous treatment. Moreover, as we explain today in *Joslyn* v. *Chang, ante* 344, 348-349 (2005), the adoption of this statute of repose was the product of much legislative study and consideration whether limiting the duration of potential medical malpractice liability would control the costs of malpractice insurance and thus protect the supply of medical care in the Commonwealth. See *Harlfinger* v. *Martin, supra* at 41-42, 43.

We will not undo the Legislature's studied determination. It would be especially inappropriate to read § 4 as "intending" a continuous treatment exception. Tolling under such rules would vitiate the statute of repose, and the plaintiff conceded as much at oral argument. The statute of repose either would not apply, or only would apply after delay, in the broad category of cases where an allegedly negligent act or omission was followed by further care or responsibility by the same doctor. Tolling the statute of repose in every such case would eliminate the system-wide certainty that the Legislature deemed necessary. Such a result is inimical to the Legislature's intent.[9]

The cases from other jurisdictions cited by the plaintiff do not affect our view of what our Legislature intended. Most of these cases involve tolling statutes of limitations rather than statutes of repose. See *Tullock* v. *Eck*, 311 Ark. 564, 568 (1993); *Lane* v. *Lane*, 295 Ark. 671, 673 (1988); *Borgia* v. *City of N.Y.*, 12 N.Y.2d 151, 154-156 (1962); *Hotelling* v. *Walther*, 169 Or. 559, 561-562 (1942); *Peteler* v. *Robinson*, 81 Utah 535, 541 (1932); *Farley* v. *Goode*, 219 Va. 969, 970-971 (1979). Those cases that do toll a statute of repose involve statutes with differ-

---

[9]We previously reserved consideration of continuing treatment exceptions in a case involving an identically worded provision in G. L. c. 231, § 60D, that imposes a seven-year statute of repose for malpractice actions brought on behalf of minors. *Harlfinger* v. *Martin*, 435 Mass. 38, 52 n.18 (2001). We concluded there that the facts did not bring the claim within any version of the continuous treatment doctrine. *Id.* at 52. We added, however, that "[t]he doctrine appears contrary to the express terms of G. L. c. 231, § 60D, and G. L. c. 260, § 4, both of which provide that 'in no event' may a claim be 'commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury.' " *Id.* at 52 n.18.

ent language from ours, and either base their holdings on that differing language and other State law, see *Ewing* v. *Beck*, 520 A.2d 653, 655 n.2, 663 (Del. 1987); *Cunningham* v. *Huffman*, 154 Ill. 2d 398, 401, 404-405 (1993), or simply rest their decisions on equitable considerations that we cannot apply in the face of our statute's language, see *Sherwood* v. *Danbury Hosp.*, 252 Conn. 193, 202-203 & n.9 (2000); *Blanchette* v. *Barrett*, *supra* at 258 n.1, 277-278.

The statute of repose, then, bars the plaintiff from proceeding against the defendants based on acts or omissions that were performed or should have been performed prior to August 30, 1994. We recognize that the plaintiff alleges additional negligence after August 30, 1994, for which liability would not be extinguished by the statute of repose (suit was filed August 30, 2001). However, her claims allegedly arising during the post-August 30, 1994, period suffer from a "complete failure of proof concerning an essential element" of the plaintiff's case. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991). Although the prospective testimony of plaintiff's expert witnesses, viewed in the light most favorable to the plaintiff, could be read as evidence of failures by Zafiropoulos to meet the relevant standard of care in 1995, there is no evidence that the alleged negligence caused any harm. The only proffered testimony on causation is that "[h]ad a biopsy been performed by September of 1994, it likely would have resulted in a curative resection." The plaintiff has not come forward with any evidence that a different course of testing in 1995 (between Rudenauer's February 21, 1995, visit and the diagnosis of cancer in December, 1995) would have affected the ultimate outcome. (Nor is there any evidence of negligence or causation pertaining to the period between September, 1994, and February 21, 1995.) Thus, the plaintiff has not presented sufficient evidence to reach a jury as to any alleged negligence after August 30, 1994.

The order of the Superior Court denying the defendants' motion for summary judgment is vacated. Summary judgment is to enter for the defendants.

*So ordered.*