NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-148

LORRAINE BELLMAR, personal representative,[1]

vs.

ROBERT MOORE & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On June 12, 2016, Harry Bellmar died from ventricular arrhythmia at the age of sixty-two and the plaintiff, as personal representative of Mr. Bellmar's estate, filed suit against the defendants, alleging negligent medical treatment and wrongful death. The sole issue on appeal is whether summary judgment was appropriate under G. L. c. 260, § 4. We hold that it was.

Background. Because this appeal relates to the grant of summary judgment, we discuss the facts necessary to decide this issue in the light most favorable to the nonmoving party, the

---

[1] Of the estate of Harry Bellmar.

[2] Robert R. Moore, M.D., Ph.D., P.C., doing business as Moore Family Practice.

plaintiff.  See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016).

Dr. Robert Moore was Mr. Bellmar's primary care physician. At all relevant times, Mr. Bellmar suffered from morbid obesity and osteoarthritis of the knees and was suspected to suffer from sleep apnea.  In 2006, when Mr. Bellmar was fifty-three years old, in preparation for lumbar disc surgery, an electrocardiogram (EKG) was performed.  Dr. Moore wrote in his medical notes that Mr. Bellmar had an abnormal EKG and noted there was "possible ectopic atrial rhythm."  A nurse practitioner working under Dr. Moore's supervision diagnosed Mr. Bellmar with hypertension and prescribed antihypertensive medication, and Dr. Moore cleared Mr. Bellmar for surgery. Dr. Moore did not order or recommend additional cardiac testing or a cardiology consultation based on the abnormal EKG report during Mr. Bellmar's 2006 office visit or anytime thereafter. After that visit, Dr. Moore saw Mr. Bellmar on thirteen other occasions between 2006 and 2015.[3]  Mr. Bellmar died from ventricular arrhythmia in 2016.

---

[3] The plaintiff's complaint provides the dates of these visits: December 13, 2006; December 17, 2010; May 23, 2011; January 5, 2012; April 23, 2012; May 14, 2012; July 10, 2013; May 27, 2014; June 16, 2014; September 26, 2014; June 2, 2015; November 6, 2015; and November 24, 2015.

Mr. Bellmar's widow, as personal representative of his estate, filed the instant suit in 2017, alleging that the defendants were negligent in their medical treatment of Mr. Bellmar.  During discovery, the plaintiff provided reports written by her expert witness, Dr. Richard Pels, regarding Mr. Bellmar's health conditions, the treatment provided to him by the defendants, and the reasonable standard of care. Dr. Pels stated that based on Mr. Bellmar's 2006 EKG report, Dr. Moore had deviated from the standard of medical care by failing to follow up on the 2006 EKG results, especially given Mr. Bellmar's risk factors.  After a request by the defendants, the court held an evidentiary hearing pursuant to Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993), and Commonwealth v. Lanigan, 419 Mass. 15, 26 (1994), at which Dr. Pels testified.[4]  Dr. Pels testified that had Mr. Bellmar been prescribed different medications or treatments, his death would have been preventable.  Dr. Pels was also asked, "And even if [Mr. Bellmar] had a normal EKG in 2006, would his underlying risk factors warrant the performance of a follow-up EKG?" Dr. Pels responded, "Yes, it would have."

The defendants filed a motion for summary judgment, arguing that G. L. c. 260, § 4, the statute of repose, bars the

_____

[4] The court's ruling on the defendant's Daubert-Lanigan motion is not at issue on this appeal.

3

plaintiff's claims as a matter of law.[5]  After the Superior Court

judge heard arguments from the parties, the judge ruled in favor

of the defendants.  This appeal followed.

Discussion.  The plaintiff argues that summary judgment was

not appropriate and that we should overrule Moran v. Benson, 100

Mass. App. Ct. 744 (2022),[6] because it inappropriately expands

the scope of G. L. c. 260, § 4.  We first state the applicable

standard of review before examining the holding in Moran and

whether summary judgment was appropriate in this case.

1.  Standard of review.  A motion for summary judgment

under Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404

(2002), is appropriate where "the moving party . . . 'show[s]

that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law'

based on the undisputed facts."  Premier Capital, LLC v. KMZ,

Inc., 464 Mass. 467, 474 (2013), quoting Mass. R. Civ.

P. 56 (c).  "In deciding a motion for summary judgment the court

may consider the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits" (citation

_____

[5] The defendants also argued that the plaintiff failed to show
exactly when the interstitial scarring that led to Mr. Bellmar's
death occurred.  The Superior Court allowed summary judgment on
the grounds that the statute of repose bars recovery and,
because we affirm on those grounds, we need not address the
defendants' other argument.
[6] The Supreme Judicial Court denied further appellate review.
See 498 Mass. 1108 (2022).

4

omitted).  Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 506 (2019).  We review the allowance of a motion for summary judgment de novo.  Bulwer, 473 Mass. at 680.

2.  Revisiting Moran.  General Laws c. 260, § 4, second par., provides as follows:

> "Actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitoria shall be commenced only within three years after the cause of action accrues, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body" (emphasis added).

This period of repose creates an "absolute time limit" on medical malpractice claims, even when "the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired."  Moran, 100 Mass. App. Ct. at 746, quoting Parr v. Rosenthal, 475 Mass. 368, 382 (2016).  "A repose period begins to run from some 'definitely established event,' abolishing a plaintiff's cause of action thereafter, even if the injury does not occur, or is not discovered, until after the statute's time limit has expired" (citation omitted).  Rudenauer v. Zafiropoulos, 445 Mass. 353, 358 (2005).  Although this can lead to harsh results, see Moran, supra at 748, the Legislature's intent was that tolling under the statute not be allowed in an effort to create "systemwide certainty."  Rudenauer, supra at 359.

5

In Moran, the patient underwent a magnetic resonance imaging (MRI) scan and the results indicated that she was suffering from multiple sclerosis.  See 100 Mass. App. Ct. at 744-745.  The doctor failed to inform her of these results, instead treating her for migraine headaches.  See id.  This court ruled that there was only one "definitely established event" from which the period of repose could be considered to have begun:  the initial failure to act after the MRI.  Id. at 747.  This court affirmed the judgment in favor of the medical provider defendants because the only "definitely established event" occurred more than seven years prior to the filing of the complaint and the continuing medical treatment, which was within seven years of the filing of the complaint, could not stand alone.  Id. ("Moran labors hard to claim the defendants' actions within the repose period are separate acts or omissions constituting negligence; however, such acts are nothing more than the defendants' acts of continuing treatment").

The plaintiff argues that Moran inappropriately expands the scope of G. L. c. 260, § 4, by preventing claims arising from negligence that occurred inside the period of repose.  We disagree.  In Moran, the court held that the initial failure to act on the MRI scan eclipsed any other claims of negligence and was thus the only "definitely established event."  Id. at 747.  Our holding in Moran thus does not eliminate the possibility of

a complaint surviving summary judgment where the plaintiff has sufficiently established that subsequent medical appointments inside the period of repose are not simply continuing medical treatment but are rather the basis of a negligence claim on their own. See id. To simplify, Moran does not address the outcome under G. L. c. 260, § 4, where the plaintiff has successfully pleaded multiple "definitely established events," some of which are within seven years of the filing of the complaint and some of which are not. As a result, we see no need to revisit Moran because its holding does not, as the plaintiff argues, improperly provide immunity from suit for negligent acts that occur within the period of repose.

3. Summary judgment. Turning to the facts of this case, the motion judge, following this court's holding in Moran, ordered entry of summary judgment because "[t]he allegations in the instant complaint clearly center on Dr. Moore's failure to order subsequent testing after the abnormal EKG in December 2006," which is outside the period of repose. The plaintiff claims that despite the fact that the 2006 EKG was outside the period of repose, summary judgment should not have been granted since eleven of the thirteen subsequent medical appointments mentioned in the complaint were within seven years of the filing of the complaint. We disagree.

7

The plaintiff has not pleaded or demonstrated any acts of negligence that could be considered "definitely established events" which occurred within seven years of the filing of the complaint. The subsequent medical appointments which occurred within seven years of the filing of the complaint cannot stand alone because the plaintiff has not established what the standard of care required in the absence of the alleged negligence that occurred more than seven years before the complaint was filed. "The proper standard is whether the physician, if a general practitioner, has exercised the degree of care and skill of the average qualified practitioner, taking into account the advances in the profession." Palandjian v. Foster, 446 Mass. 100, 104 (2006), quoting Brune v. Belinkoff, 354 Mass. 102, 109 (1968). The plaintiff's complaint does not allege independent negligence by Dr. Moore after his 2006 EKG other than his inaction in failing to order further tests. Although the testimony of Dr. Pels makes this case closer than Moran, it does not eliminate this fundamental deficiency. Dr. Pels confirmed that even if Mr. Bellmar had a normal EKG in 2006, his underlying risk factors would warrant the performance of a follow-up EKG.[7] In this context, "warrant" means "to serve

_____

[7] Although this testimony is not the type of evidence specifically listed under Mass. R. Civ. P. 56 (c), its inclusion in the summary judgment exhibits was appropriate and we consider

8

as or give adequate ground or reason for." See Merriam-Webster's Collegiate Dictionary 1410 (11th ed. 2005). This testimony thus means that even without the abnormal EKG in 2006, testing would have been appropriate during the medical appointments, including those that occurred within seven years of the filing of the complaint. The testimony does not establish either what the standard of care was during these subsequent medical appointments, or that said standard of care was breached.

Fundamentally, we hold that the plaintiff did not present any evidence to the motion judge that would distinguish this case from Moran: evidence that the defendants, even without the abnormal EKG in 2006, were negligent during the subsequent medical appointments. Accordingly, we conclude that the subsequent medical appointments in this case are the type of

_____

it when deciding this issue on appeal. See Correllas v. Viveiros, 410 Mass. 314, 316-318 (1991).

continuing treatment described in <u>Moran</u> and that summary judgment was appropriate.

<u>Judgment affirmed</u>.

By the Court (Ditkoff,
Englander & Walsh, JJ.[8]),

<i>[signature]</i>

Assistant Clerk

Entered:  December 29, 2023.

---

[8] The panelists are listed in order of seniority.