SUPREME JUDICIAL COURT 
 
 LORRAINE BELLMAR, personal representative,[1] vs. ROBERT MOORE & another[2]

 
 Docket:
 SJC-13643
 
 
 Dates:
 December 4, 2024 - March 27, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Barnstable
 

 
 Keywords:
 Medical Malpractice, Standard of care, Appeal. Negligence, Medical malpractice, Doctor, Standard of care, Statute of repose. Repose, Statute of. Doctor. Practice, Civil, Summary judgment. Words, "Definitely established event."
 
 

       Civil action commenced in the Superior
Court Department on December 26, 2017.
      The case was heard by Gregg J. Pasquale,
J., on a motion for summary judgment.
      After review by the Appeals Court, 103
Mass. App. Ct. 1117 (2023), the Supreme Judicial Court granted leave to obtain
further appellate review.
      Bruce A. Bierhans for the plaintiff.
      Stephen M. O'Shea (Alexis Harrington also
present) for the defendants.
      KAFKER, J. 
This case concerns whether the plaintiff's medical malpractice claim
against the defendants is barred by the seven-year statute of repose set forth
in G. L. c. 260, § 4.  A
judge of the Superior Court allowed the defendants' motion for summary judgment
on the basis that the statute bars the claim because it was based on a
negligent response to an abnormal electrocardiogram (EKG) that occurred more
than seven years before the filing of the claim.  We reverse.
      Although the statute of repose bars
medical malpractice causes of action based on negligent acts or omissions that
occurred more than seven years before the commencement of the action, it does
not shield later negligent acts, so long as the medical malpractice claim is
not predicated on any acts or omissions that took place more than seven years
before the filing of the claim.  In the
instant case, there are genuine issues of material fact in dispute regarding
whether the defendants' treatment of the decedent within the seven-year period
was negligent, without reliance on the negligent response to the abnormal EKG. 
      1. 
Background.  The plaintiff,
Lorraine Bellmar, as the personal representative of the estate of her deceased
husband, Harry Bellmar (decedent), commenced this negligence and wrongful death
action against the decedent's primary care doctor, the defendant Robert Moore,
and Dr. Moore's medical practice.  At the
time of the decedent's death, in June 2016, he had been Dr. Moore's patient for
approximately ten years, since May 2006. 
When the decedent first saw Dr. Moore, and throughout the time that he
was Dr. Moore's patient, he suffered from clinical morbid obesity and
hypertension.  He was also diagnosed with
obstructive sleep apnea and, at times, high cholesterol.  
      On December 8, 2006, in preparation for
lumbar disc surgery, the decedent had an EKG at Cape Cod Hospital.  The EKG was abnormal, and the notes on the
EKG report indicated "possible ectopic atrial rhythm."  On December 13, 2006, he had an appointment
at Dr. Moore's office, where he was cleared for the upcoming surgery.  The decedent was also prescribed
anti-hypertensive medication at that appointment, due to high blood pressure.  Over the next almost ten years, he saw Dr.
Moore regularly, for at least twelve appointments.[3]  Dr. Moore did not order cardiac testing at
any of those appointments.  The decedent
died on June 12, 2016.  Autopsy findings
indicate that the cause of death was cardiac arrythmia.
      The plaintiff thereafter commenced this
action, in December 2017, claiming that Dr. Moore was negligent in his medical
treatment of the decedent.  During the
course of pretrial proceedings, the plaintiff provided the defendants with
three reports from her expert, Dr. Richard Pels.  In his first report, dated July 17, 2017, Dr.
Pels stated that "[b]ased upon [the decedent's] history of hypertension
and morbid obesity, coupled with [the preoperative EKG], the standard of care
at the time (and thereafter) required Dr. Moore to pursue additional cardiac
evaluation."  Dr. Pels also noted
that the decedent "never had further testing and he never even had a
repeat EKG."  In Dr. Pels's medical
opinion, Dr. Moore's care of the decedent "deviated from common accepted
practice and fell below the standard of care expected of the average qualified
doctor because he never followed up on the abnormal EKG in 2006 . . . .  In addition, in the ensuing [ten] years of
caring for [the decedent], Dr. Moore never ordered another EKG for this patient
with hypertension."
      Dr. Moore subsequently filed a motion to
exclude Dr. Pels's testimony, which the judge denied after holding an
evidentiary hearing pursuant to Daubert v. Merrell Dow Pharms., Inc., 509 U.S.
579 (1993), and Commonwealth v. Lanigan, 419 Mass. 15 (1994).  At the hearing, Dr. Pels testified that each
of the decedent's conditions -- obesity, hypertension, high cholesterol, and
obstructive sleep apnea -- put him at risk for cardiac disease.  He noted that the decedent's 2006 EKG was
abnormal and that no follow-up EKG was ever done between 2006 and the time of
the decedent's death in 2016.  When asked
whether, even if the decedent's 2006 EKG had been normal, the underlying risk
factors would warrant the performance of a follow-up EKG, he responded,
"Yes," noting that the decedent's conditions predisposed him to
cardiac disease that can worsen over time.
      Dr. Pels was also asked for his opinion
"to a reasonable medical certainty as to what the standard of care
required . . . to treat [the decedent's] cardiac health between 2006 and
2016," to which Dr. Pels responded that, in his opinion, Dr. Moore should
have obtained an EKG and then, based on the EKG findings, either proceeded with
additional cardiac testing or referred the decedent to a cardiologist, neither
of which was done.  On cross-examination,
Dr. Pels stated that cardiac testing and care of the decedent were necessary
and when asked whether they were necessary "based solely" on the
abnormal 2006 EKG, Dr. Pels responded, "And the absence of [a] repeat
EKG."  
      The defendants moved for summary judgment
based on the statute of repose.  The
judge allowed the motion, and the Appeals Court affirmed.  See Bellmar v. Moore, 103 Mass. App. Ct. 1117
(2023).  We allowed the plaintiff's
application for further appellate review.[4]
      2. 
Discussion.  We review the trial
court's grant of summary judgment de novo. 
See, e.g., Adams v. Schneider Elec. USA, 492 Mass. 271, 280 (2023).  "Summary judgment is appropriate where
there is no material issue of fact in dispute and the moving party is entitled
to judgment as a matter of law," and we review the evidence in the light
most favorable to the party against whom summary judgment entered.  HSBC Bank USA, N.A. v. Morris, 490 Mass. 322,
326-327 (2022).
      The single issue before us is whether the
plaintiff's claims are barred by the seven-year statute of repose set forth in
G. L. c. 260, § 4, second par. 
The statute provides, in relevant part, that
"[a]ctions
of contract or tort for malpractice, error or mistake against physicians . . .
shall be commenced only within three years after the cause of action accrues,
but in no event shall any such action be commenced more than seven years after
occurrence of the act or omission which is the alleged cause of the injury upon
which such action is based" (emphasis added).
The emphasized
language constitutes a statute of repose, the effect of which "is to place
an absolute time limit on the liability of those within [its] protection and to
abolish a plaintiff's cause of action thereafter, even if the plaintiff's
injury does not occur, or is not discovered, until after the statute's time
limit has expired" (citation omitted). 
Rudenauer v. Zafiropoulos, 445 Mass. 353, 357 (2005).  As this court has explained, the "repose
period begins to run from some 'definitely established event,' abolishing a
plaintiff's cause of action thereafter, even if the injury does not occur, or
is not discovered, until after the statute's time limit has expired."  Id. at 358, citing McGuinness v. Cotter,
412 Mass. 617, 622 (1992).      
      We have also explained that continuing
treatment alone does not toll the statute of repose time period.  In Rudenauer, a case involving a patient who
died in 2000 from cancer that allegedly could have been detected and
successfully treated had the defendant doctor properly monitored a kidney
condition in 1990 and 1991, the court stated that G. L. c. 260,
§ 4, 
"reflects a
legislative determination that an absolute time limit is appropriate in medical
malpractice actions . . . .  Its clear
language . . . permits no conclusion other than that the Legislature intended
to extinguish malpractice claims seven years after negligent acts or omissions
even when a doctor's treatment of, or responsibility for, a condition continued
beyond the alleged negligence."
Rudenauer, 445
Mass. at 354, 358.  See Parr v.
Rosenthal, 475 Mass. 368, 381-382 (2016) (medical malpractice statute of repose
not subject to tolling under continuing treatment doctrine).  Although the defendant doctor continued to
treat the patient in Rudenauer during the repose period, such continuing
treatment alone was insufficient to toll the repose period.  The court reasoned that if continuing
treatment alone were sufficient,
"[t]he
statute of repose either would not apply, or only would apply after delay, in
the broad category of cases where an allegedly negligent act or omission was
followed by further care or responsibility by the same doctor.  Tolling the statute of repose in every such
case would eliminate the systemwide certainty that the Legislature deemed
necessary.  Such a result is inimical to
the Legislature's intent." 
Rudenauer, supra
at 359.
      Importantly, the court in Rudenauer also
addressed the occurrence, and effect on the repose period, of separate acts of
negligence, recognizing that the plaintiff had alleged "additional
negligence after August 30, 1994, for which liability would not be extinguished
by the statute of repose (suit was filed August 30, 2001)" (emphasis added).  Id. at 360. 
Those alleged separate acts of negligence involved the patient returning
to the doctor in 1995, reporting additional symptoms.  See id. at 355.  That, in turn, led to ten months of further
testing, which ultimately led to the cancer diagnosis.  See id. 

      In that case, those separate acts of
negligence were of no effect for other reasons. 
As the court explained, although "[t]here [was] a suggestion in the
record that [the defendant] failed to comply with the standard of care in 1995
by failing to diagnose the problem promptly on Rudenauer's return," id. at
356, the alleged separate acts of negligence were of no effect because the
"claims allegedly arising during the post-August 30, 1994, period
suffer[ed] from a 'complete failure of proof concerning an essential element'
of the plaintiff's case."  Id. at
360, quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706,
711 (1991).  There was, in short,
"no evidence that any act or omission in 1995 was causally connected to
Rudenauer's eventual death." 
Rudenauer, supra at 356.  By then
it was too late, because nothing could be done medically to save him at that
point.
      Rudenauer's discussion of a
"definitely established event" also merits careful analysis.  Id. at 358. 
A "definitely established event," as explained in Rudenauer,
is the commencement date for purposes of the seven-year repose period.  See id. 
A "definitely established event" is an event of medical
treatment or care forming the basis of the medical malpractice action.  In the words of the statute of repose, it is
the "occurrence of the act or omission which is the alleged cause of the
injury upon which such action is based" (emphasis added).  G. L. c. 260, § 4, second par.  And, pursuant to the statute, a
"definitely established event" that occurs more than seven years
before the commencement of a malpractice action cannot be the basis of such an
action.  
      The Rudenauer court did not suggest,
however, that there would necessarily be only one "definitely established
event" for a particular illness or injury. 
In the case of a doctor treating a patient over many years, as in
Rudenauer, and as here, there may be more than one "definitely established
event," that is, more than one negligent act or omission from which a
repose period might run.  Rudenauer,
supra at 356.  Negligent acts or
omissions within the seven-year period causing injury may be the basis of a
malpractice action.  Prior negligence
that occurs outside of the repose period does not shield later negligence if
such later negligence can be found to cause an injury.  This is so even if a patient's treatment
happens to involve the same illness, or disease, so long as the malpractice
claim is not predicated on an act or omission that took place outside of the
repose period.[5]  
      Here, Dr. Moore argues that the abnormal
EKG in December 2006 is the "definitely established event" of
negligence, and that the plaintiff's 2017 commencement of this action was well
outside of the seven-year repose period. 
The plaintiff, on the other hand, argues that at each of the decedent's
appointments with Dr. Moore, Dr. Moore was negligent –- i.e., committed a
breach of the standard of care –- in failing to order an EKG or provide other
cardiac care on the basis of the decedent's various conditions, that is, not on
the basis of the abnormal EKG, but on the basis of the decedent's presentation
at each appointment.  Each appointment,
in other words, in the plaintiff's view, constituted negligence and thus its
own "definitely established event" from which the repose period
started to run.  Based on this record, we
conclude that there is a genuine issue of disputed fact whether Dr. Moore's
treatment of the decedent was negligent without relying on the abnormal EKG
done in 2006, and whether such later negligence could be found to have caused
his death.
      The motion judge found that the
allegations that the plaintiff set forth in her complaint centered on Dr.
Moore's failure to order "subsequent" testing after the abnormal 2006
EKG, and that the negligence alleged was "remarkably similar" to that
in a recent Appeals Court case, Moran v. Benson, 100 Mass. App. Ct. 744
(2022).  In that case, the Appeals Court
concluded that the plaintiff's claim was based on a magnetic resonance imaging
scan (MRI) that occurred more than seven years before the filing of the claim
that indicated that she likely had multiple sclerosis.  The court concluded that the claim was
therefore   
"without
merit because the negligence alleged in the complaint [was] that the defendants
did not advise her that she needed to be monitored for her progressive multiple
sclerosis, nor did they set in motion a plan for responsible care and treatment
of her condition by a multiple sclerosis specialist.  This was the entirety of her claim, and the
treatment within the seven-year period was not alleged to be separate acts of
negligence . . . ." 
Id. at 747.[6]  Here, the judge concluded that for purposes
of the repose period, the only "definitely established event" of
negligence was the abnormal EKG in 2006. 
We disagree.
      There is testimony from the plaintiff's
expert, Dr. Pels, that even if the 2006 EKG had been normal, the decedent's
underlying risk factors warranted a follow-up EKG.  In other words, regardless of the 2006 EKG,
at each of the decedent's appointments with Dr. Moore, Dr. Moore failed to
provide the care warranted by the decedent's health and risk factors.[7]  This testimony was consistent with Dr. Pels's
opinion, in his first report, that Dr. Moore's care of the decedent fell below
the standard of care because, "[i]n addition" to not following-up on
the abnormal 2006 EKG, "in the ensuing [ten] years of caring for [the
decedent], Dr. Moore never ordered another EKG for this patient with hypertension."  The plaintiff thus adduced evidence that at
each of the decedent's appointments, Dr. Moore failed to meet the standard of
care because he failed to provide relevant cardiac treatment for the decedent,
not because of the abnormal EKG but because, again, of the decedent's
presentation at those appointments.  His
morbid obesity, hypertension, high cholesterol, and obstructive sleep apnea
obviously put him at risk for cardiac disease. 
Consequently, genuine issues of material fact exist regarding whether
there are negligent acts or omissions, that is, "definitely established
events" that fall within the repose period, providing the basis of a
medical malpractice claim.  To reiterate,
those additional acts of negligence may be actionable as they occurred within
the seven-year time period before the commencement of the medical malpractice
action and they are not dependent upon the 2006 EKG.  The 2006 negligence, we emphasize, cannot
shield later acts of negligence.
      3. 
Conclusion.  For the foregoing
reasons, and having reviewed the evidence in the light most favorable to the
plaintiff, we conclude that the seven-year statute of repose set forth in
G. L. c. 260, § 4, second par., does not bar the plaintiff's
claims.  We therefore reverse the
judgment granting summary judgment in the defendants' favor and remand to the
Superior Court for further proceedings consistent with this opinion.
So ordered.

footnotes

[1] Of the estate
of Harry Bellmar.

[2] Robert R.
Moore, M.D., Ph.D., P.C., doing business as Moore Family Practice.

[3] The record
before the court includes medical records from appointments dated December 17,
2010; May 23, 2011; January 5, 2012; May 14, 2012; April 23, 2013; July 10,
2013; May 27, 2014; June 16, 2014; September 26, 2014; June 2, 2015; November
6, 2015; and November 24, 2015.

[4] In their
motion for summary judgment, the defendants also argued that summary judgment
was warranted on the basis that the plaintiff had not presented sufficient
evidence that the decedent's death was caused by any negligence of Dr.
Moore.  In particular, Dr. Moore argued
that, given the decedent's cardiac arrythmia, "the only thing that could
have saved [the decedent] was a cardiac defibrillator, but there is
insufficient evidence to support an opinion that [the decedent] ever would have
been a candidate to receive a cardiac defibrillator."  In his decision allowing the defendants'
motion for summary judgment, the trial court judge did not address this
separate causation issue.  Rather, he
allowed the motion solely on the basis of the statute of repose related to the
failure to follow up on the EKG. 
Although the defendants raise the causation issue on appeal, we decline
to address it at this juncture, where the issue has not been fully developed,
or decided, in the trial court.

[5] As explained
above, continued treatment alone is not sufficient.  Such treatment must itself involve a
negligent act or omission resulting in injury, without any reliance on an act
or omission that occurred more than seven years before the filing of the claim.

[6] The Appeals
Court also stated, in dictum, that "[e]ven if we generously read the
complaint to have alleged separate acts of negligence, that reading would
nonetheless be eclipsed by the fact that the 'definitely established event' of
the MRI occurred nearly eight years before the complaint was filed."  Moran, 100 Mass. App. Ct. at 747.  We do not adopt this additional
interpretation of the statute of repose. 
As stated above, later acts of negligence cannot be shielded by prior
acts of negligence merely because they involve the same illness or
disease.  Those later acts cannot,
however, be predicated on acts or omissions that took place beyond the
seven-year period.  There must be a
negligent act or omission within the seven-year period that can be found to be
a cause of the injury.

[7] In this
regard, this case appears to differ from the facts alleged in Moran.